UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CANDIDA ROSE AREAS PLATA,

Petitioner,

v.

FERETI SEMAIA, et al.,

Respondents.

No. 5:26-cv-04848-JDE

ORDER REGARDING PETITION

## I.
## PROCEEDINGS

On August 24, 2026, Candida Rose Areas Plata ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus alleging her detention by immigration authorities violates the Due Process Clause, 8 U.S.C. § 1222(a), and 8 U.S.C. § 1225(b)(2)(A). Dkt. 1 ("Petition" or "Pet."). She seeks release; a declaration that her detention was unlawful; an order enjoining Respondents from removing her from the district while this action is pending; an order requiring Respondents to return all property taken from Petitioner at her detention, including a Samsung mobile telephone, a gold chain and medallion, and gold earrings; and an order requiring Respondents to file a status report confirming Petitioner's release and the return of property within 24 hours of

such release. Pet at 22-23. The docket reflects that the Petition was served on Respondents through the United States Attorney's Office for the Central District of California ("USAO") by email on August 24, 2026, with the USAO added to the Court's docket on that same date, which indicates that the USAO received electronic notification by email through the Court's CM/ECF system of all subsequent filings in the action.

On August 25, 2026, the Court issued a Notice of General Order 26-05 (Dkt. 4, "Order"), that included several orders regarding the briefing of this matter, including the following clear orders:

1. "Counsel for Respondent shall a file a notice of appearance within 3 calendar days of the date the Clerks' Office issues this Notice" ["Order #1"]
2. "Respondent shall file an answer to the habeas petition no later than 7 days from the date the Clerk's Office issues this notice." ["Order #2"]

Order at 2.

The Order is based, in part, on United States District Court, Central District of California, General Order No. 26-05, issued on April 1, 2026, that directs the same briefing deadlines in all "petitions for writs of habeas corpus filed by persons seeking immigration relief." <u>See</u> Order at 3-7 (CM/ECF pagination) ("G.O. 26-05").

The Order also includes a letter, dated March 26, 2026, indicating that the USAO "represents United States Immigration and Customs Enforcement (ICE), and ICE employees named in their official capacity, in immigration-related habeas cases filed in the Central District of California under 28 U.S.C. § 2241" and "[e]ffective immediately, the USAO hereby consents, pursuant to 28 U.S.C. § 636(c)(1), to the disposition by either a United States Magistrate Judge <u>or</u> a United States District Judge (at the discretion of the Court) in all such cases." Order at 9 (CM/ECF pagination). G.O. 26-05 provides that

petitioners may consent to "Magistrate Judge jurisdiction" over immigration habeas petitions, and the USAO's general consent to such jurisdiction will be deemed final unless the USAO withdraws such general consent "within 3 days of service of the Petition or within 24 hours of service if an application for a temporary restraining order accompanies the petition." G.O. 26-05 at 1-2. Here, Petitioner "voluntarily consented to have a Magistrate Judge conduct all further proceedings in this case" on August 24, 2026. Dkt. 2. The USAO did not withdraw its general consent within 3 days of service of the Order. As such, the case has been fully consented to the undersigned for all purposes.

Per Order #1, the USAO was ordered to file a Notice of Appearance by August 28, 2026. The USAO did not do so. Per Order #2, the USAO was ordered to file an Answer to the Petition by September 1, 2026. The USAO did not do so. The Court advised the USAO on September 2, 2026, of these failures and ordered, "Respondents are ORDERED to file an Answer to the Petition by noon on September 4, 2026." Dkt. 8 ("Order #3"). The USAO did not do so. As such, Respondents and their counsel, the USAO, are in apparent violation of three separate, clear orders. In fact, as of the date of this order, Respondents and the USAO have not submitted any appearance or other filing in this case.

As Respondents have not timely responded to the Petition, the Court proceeds to rule on the Petition. For the reasons explained below, the Petition is granted, in part.

## II.
## BACKGROUND

The following facts are taken from the Petition. Respondents had an opportunity to challenge these facts, were reminded of that opportunity and even provided more time than otherwise allocated to do so, but have apparently chosen not to challenge the facts asserted in the Petition. As such, the Court accepts those unchallenged facts herein.

Petitioner is a native and citizen of Nicaragua who fled that country after being assaulted in July 2022 by an armed group of what she understood to be government-aligned paramilitaries. Pet., ¶¶ 1, 28, 29. She was encountered by U.S. authorities on December 11, 2022, near the southern border and was processed and released on a parole by the Department of Homeland Security ("DHS") on December 16, 2022. Pet., ¶¶ 31-32. She then "reported to ICE as instructed and traveled to Fontana, California, where she has lived on the same street ever since." Pet., ¶ 32. On December 7, 2023, DHS served Petitioner with a Notice to Appear, placing her in immigration removal proceedings. Pet., ¶ 33. Petitioner contends that the allegation in support of the institution of removal proceedings is based on an error by DHS, but she "does not ask this Court to adjudicate her removability." Pet., ¶ 34.

On February 14, 2023, ICE issued Petitioner an "Order of Release on Recognizance" ("ORR") confirming her release status, but directing her to comply with certain conditions, including conditions to surrender for removal if so ordered, report in person to ICE as directed, not change residence without permission, not violate any local, State, or federal law, assist ICE in obtaining travel documents, and enroll and participate in an Alternative to Detention ("ATD") program, subject to electronic monitoring and possible curfew. Pet., ¶¶ 38, 39; Exh. A. Petitioner "complied with every condition of her release from February 14, 2023 until her re-detention on August 14, 2026—a period of approximately three years and six months," with such compliance documented by ICE's own records. Pet., ¶¶ 42, 43. Petitioner reported as required, was granted employment authorization, has "worked steadily at two grocery markets in the Inland Empire," is the principal support for her mother and her two minor children, who remain in Nicaragua, and has lived with her partner, a lawful permanent resident of the United States, for three and one half years. Pet., ¶¶ 44-48. Petitioner has never been found to be a danger to the

community or a flight risk. Pet., ¶ 49. Petitioner has an application for asylum, withholding of removal, and protection under the Convention Against Torture pending since March 12, 2025, with a next hearing set for September 30, 2026. Pet., ¶¶ 50-51. No final order of removal has been issued. Pet., ¶ 52.

On June 14, 2026, Petitioner was arrested following an argument with her partner at their apartment in Fontana. Pet., ¶¶ 55-58. She was released on bail that same night, with bail posted by her partner. Pet., ¶ 58. As of the date of the Petition, no criminal charge has been filed as a result of that arrest and Petitioner has no other known criminal history in the United States. Pet., ¶ 59.

Petitioner reported for her ICE check-in on July 1, 2026, as scheduled. Pet., ¶ 60. ICE did not take any action at that time regarding the arrest or for any other issue; she was permitted to return home and continue working. Pet., ¶ 61. From July 1 to August 14, 2026, "nothing about Petitioner's circumstances changed. She did not move. She did not fail to report. She was not arrested again. She committed no act that anyone has identified in writing as a violation of her release conditions." Pet., ¶ 62.

Petitioner was directed to appear at an ICE office in San Bernardino on August 14, 2026, and she did so. Pet., ¶¶ 63-64. An ICE officer questioned her about the June 14, 2026 incident, handcuffed her, and transported her to the Adelanto ICE Processing Center. Pet., ¶ 65. "Petitioner was not served with any written notice of an intent to revoke her release before she was handcuffed," "was not served with any written statement identifying a condition of release she was alleged to have violated," "was not given any opportunity to respond to any allegation, to submit evidence, to present her partner's account, or to be heard by any neutral decisionmaker before she was taken into custody," and was not provided, based on "information and belief," a warrant of arrest or a "Notice of Custody Determination" in connection with her August 14, 2026 detention. Pet., ¶¶ 69-70. Petitioner has been continuously

confined by ICE since August 14, 2026. Pet., ¶ 71. At the time of her arrest, immigration officials seized Petitioner's personal property, including a Samsung mobile telephone, a gold chain and medallion, a gold ring and gold earrings. Petitioner suffers from "constant pain and swelling" in her left foot due to the July 2022 assault in Nicaragua that resulted in a fracture and implantation of seven screws and two plates. Pet., ¶ 73. Despite submitting two written requests for medical attention while at Adelanto, she has not been evaluated by an orthopedic provider since her detention. Pet., ¶¶ 74, 75.

As noted, Respondents had an opportunity to challenge he foregoing facts, were reminded of that opportunity after they failed to do so within the time allotted, and were granted an extension to do so, but still elected not to challenge any of the foregoing facts.

## III.

## DISCUSSION

A petitioner seeking habeas relief must demonstrate that he or she is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The protections of habeas corpus extend to those in immigration detention. See Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin, 955 F.3d at 759.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. Zadvydas v. Davis, 533 U.S. 678, 693-94 (2001). Due process requires that an individual be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." See Mathews v.

Eldridge, 424 U.S. 319, 333, 348 (1976) (citation omitted). The Court must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

All three factors support a finding that Petitioner's due process rights were violated in the revocation of her ORR. First, she has a significant liberty interest in remaining at liberty under the ORR. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Although the initial decision to detain or release an individual may be within the government's discretion, 'the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty will be revoked only if [they] fail[ ] to live up to the . . . conditions of release.'" Faizyan v. Casey, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (alterations in original) (quoting Pinchi, 792 F. Supp. 3d at 1032); see also Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). Thus, "after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." Salazar v. Casey, 2025 WL 3063629, at *3 (S.D. Cal. Nov. 3, 2025) (quoting Pinchi, 792 F. Supp. 3d at 1032).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's ORR was revoked without an opportunity to be heard either before such deprivation or shortly thereafter. Faizyan, 2025 WL 3208844, at *7; see

also Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (finding the risk of an erroneous deprivation of liberty was high where the petitioner had not received any bond or custody redetermination hearing). Under the circumstances here, "[c]ivil immigration detention is permissible only to prevent flight or protect against danger to the community." Pinchi, 792 F. Supp. 3d at 1035. There is no evidence that Petitioner's detention would serve either purpose. Since the "initial determination that Petitioner should be [released] because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." Salazar, 2025 WL 3063629, at *4 (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.")). Petitioner contends she has complied with all conditions of her release and has work authorization. Petitioner forthrightly discloses her June 14, 2026 arrest and release the same night, and affirms no charges have been filed due to the incident. Per Petitioner, the ORR precludes commission of another local, State, or federal offense, but an arrest is not, of itself, definitive proof of the commission of an offense. Further, although arrests for certain crimes may require immigration detention in some circumstances, Respondents present no evidence or argument showing that the offense for which Petitioner was arrested is such an offense, or any evidence or argument that any change in material circumstances warranted reconsideration of Petitioner's release status. As such, due to the lack of any information provided by Respondents, the Court has no basis to conclude that the June 14, 2026 incident, of itself, provided a basis to detain Petitioner without a warrant, written notice, or an opportunity to be heard; rather, with such a dearth of information apparent, the lack of such notice and opportunity to heard here reflects a substantial risk of an erroneous deprivation of liberty.

Third, the government's interest in detaining Petitioner without a hearing or other procedural protection is low here. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."). Petitioner had never missed a check-in and had complied with the ORR for over three years without incident. Respondents have not shown any interest in detaining Petitioner on the facts here without providing her notice and an opportunity to be heard.

The Court finds the revocation of Petitioner's ORR without written notice of the basis for the revocation or any opportunity to be heard on the matter, accepting Petitioner's facts as set forth in the Petition that are unchallenged by Respondents, deprived Petitioner of her due process rights and her detention is unlawful. Faizyan, 2025 WL 3208844, at *7; Salazar, 2025 WL 3063629, at *5. Given that Respondents have identified no material changes in circumstances or otherwise opposed Petitioner's due process claim, the Court finds immediate release is warranted. See Faizyan, 2025 WL 3208844, at *7-8; Salazar, 2025 WL 3063629, at *6. Petitioner's other requests for relief are denied as moot, unsupported, and/or speculative due to the relief granted herein.

Although not a basis for the granting of the Petition, it does not escape the Court's notice that, based on the existing, unchallenged record, Petitioner has not violated any term of her ORR, reflecting careful compliance by her with all that was asked of her by ICE and DHS for several years, yet she was detained and remanded into custody without a notice or a hearing; in stark contrast, Respondents Markwayne Mullin, in his official capacity as Secretary

of DHS, and Todd Blanche, in his official capacity as Attorney General of the United States, and their counsel, the USAO, have failed to comply with three (3) Court Orders within 10 days, even after having been given notice of the first two apparent violations and having been granted an extension to comply, with no explanation or even acknowledgment of those three Orders or any acknowledgment that this case exists.

## IV.

## ORDER

IT IS ORDERED that Judgment shall be entered:

(a) granting the Petition, in part, and ORDERING Respondents to immediately (i) release **Petitioner Candida Rosa Areas Plata (A# 246-075-084)** from custody, subject to her preexisting conditions of her Order of Release on Recognizance; and (ii) return all property taken from Petitioner at the time of her detention on August 14, 2026, including a Samsung cellular telephone, a gold chain with a medallion, a gold ring, and gold earrings, and any identification documents, and

(b) denying the Petition without prejudice in all other respects as moot and/or speculative.

Dated: September 4, 2026 __

JOHN D. EARLY
United States Magistrate Judge